OLIVER B. COLBY v. SARAH A. CROCKER, *et al.*

EQUITY; MARSHALING ASSETS OF DECEASED DEBTOR; *Homestead Exemption; Specific Liens, not General Security.* A husband and wife gave a mortgage to G. on their homestead and other real estate belonging to the husband. Afterward L. obtained a judgment-lien upon all the property belonging to said husband except said homestead. Afterward the husband and wife sold and conveyed to W. a portion of the real estate not occupied as a homestead, but covered by said mortgage, and said judgment-lien. Afterward the husband died. His wife and family still occupy said homestead. The plaintiff in this action has a claim of $800 against the decedent's estate for money loaned to the decedent during his lifetime, which claim has been allowed by the probate court, but such claim is not secured in any manner, by lien or otherwise. The estate is insolvent, and unable to pay all its creditors in full. The plaintiff now seeks by this action to have the assets of the estate marshaled—to have G. compelled to exhaust that portion of said real estate occupied as a homestead in payment of said mortgage before resorting to any other property belonging to the estate; to have L. compelled to exhaust said real estate belonging to W. in payment of his (L.'s) judgment-lien, before resorting to any other property belonging to the estate, and to have the administrator in the meantime restrained from paying said mortgage or said judgment-lien from the proceeds of any property except said homestead and said property sold to W. *Held,* That the plaintiff has no such superior equities over the family of the deceased as occupiers of said homestead, or over W. as the purchaser of said land, as can be enforced either in law or equity, and therefore that this action cannot be maintained.

*Error from Coffey District Court.*

THE facts will fully appear from the syllabus, and the opinion. The district court, at the May Term 1875, sustained a demurrer to *Colby's* petition, and gave judgment in

favor of the demurring defendants for costs. *Colby*, plaintiff, appeals, and brings the record here on error for review.

*Wm. L. McConnell*, for plaintiff.

*R. S. McConnell*, *A. Gillett*, and *S. Fearl*, for defendants.

The opinion of the court was delivered by

VALENTINE, J.: This action was brought for the purpose of marshaling the assets of the estate of Allen Crocker, deceased, and of applying such assets to the payment of the debts of the estate in such manner as to be most advantageous to the interests of those creditors of the estate (of whom the plaintiff is one) who have no specific liens or other security for the pay-
ment of their claims. The plaintiff's petition sets forth in effect the following facts: 1st, The plaintiff, Colby, has a claim against said estate for $800 for money loaned to the deceased in his lifetime, which claim has been allowed by the probate court, but such claim is not secured in any manner, by lien or otherwise. 2d, The defendant Gay has two claims against said estate, one for $2,500, and the other for $1,000, each secured by a mortgage on real property. Said mortgages are liens upon the following property, to-wit — first, the homestead which was occupied by the decedent and his family during the decedent's lifetime, and by his family since his death; second, a piece of land sold and conveyed by the decedent and his wife after the execution of said mortgages, and before the decedent's death; third, other real property belonging to the estate, and upon which there are no other liens or incumbrances. There is still other property real and personal belonging to said estate not covered by said mortgages, or by any other liens or incumbrances. The said Gay is about to commence proceedings to enforce his said mortgage liens. 3d, The defendants Crockers, who are the widow and children of said decedent, occupy a portion of said mortgaged property as their homestead, and their homestead right, in this particular case, is inferior and subject to said mortgage liens, but is not

subject to any other express lien, incumbrance, or adverse right. 4th, The defendant LaRue has a judgment against said estate for $1,400, which judgment is a lien upon all the real property belonging to said estate except that portion of said real property which is occupied by the family of the deceased as a homestead, and is also a lien upon that piece of land which was sold and conveyed to defendant Geo. W. Welch; but said judgment-lien is inferior to said mortgage-liens. 5th, Defendant Geo. W. Welch did, as before stated, during the lifetime of the deceased, purchase from the decedent and his wife and procured a conveyance from them for a portion of the decedent's real property, which portion of real property was then and is now subject to both said mortgage and said judgment-liens; but it is not subject to any other express lien or incumbrance. 6th, All the heirs, and the administrator of said estate, are made parties defendant in this action. 7th, The estate is insolvent, and unable to pay all its creditors in full; or, at least, this is so, unless said homestead, and said property sold and conveyed to Welch, is used in paying the debts of the estate. The plaintiff then prays that the defendant Gay be compelled to exhaust, first, that portion of said real property occupied as a homestead in payment of his said mortgage-liens before resorting to any other property belonging to the estate; that the defendant LaRue be compelled to exhaust, first, said real property sold and conveyed to said Welch in payment of his judgment-lien, before resorting to any other property belonging to the estate, and that the administrator in the meantime be restrained from paying said mortgage-liens or judgment-lien from the proceeds of any property except said homestead, and said property sold to Welch.

Defendants Mrs. Crocker, Mary Welch, and Geo. W. Welch, demurred to said petition, on nearly all the grounds authorized by the code; and the court below sustained the demurrer on the ground that the said petition did not state facts sufficient to constitute a cause of action. This is the only ruling of the court below complained of in this court. We think

that the ruling of the court below was correct.    It is true, as
a general principle or rule of law, as administered in courts
of equity, that where a person has a lien upon two or more
funds to secure the payment of a debt, on one of which funds
another person has a similar lien, equity will require such

*Equity; lien of creditor upon two or more funds.* first-mentioned person to satisfy his lien, so far
as he can, from those funds on which the other
person has no claim, even though one or more
of the funds charged may be realty and the others personalty.
But this rule has its exceptions and limitations.    Judge Story
says, that "it is never applied except where it can be done
without injustice to the creditor, *or other party in interest hav-
ing title to the double fund,* and also without injustice to the
common debtor.    Nor is it applied in favor of persons who
are not common creditors of the same common debtor, except
upon some special equity." (1 Story's Eq. Jur., § 560.) And
Chancellor Green says, that "it will never be applied where
it is *injurious to a third party* over whom the party claiming
the benefit of the principle has no superior equity." *M. B.
& L. Association v. Conover,* 14 N. J. Ch. (1 McCart.) 220, 225.
And Mr. Adams says, that "the equity is a personal one
against the debtor, and does not bind the paramount creditor,
*nor the debtor's alienee for value.*    The equity is not binding
on the paramount creditor, for no equity can be created
against him by the fact that some one else has taken an im-
perfect security.    But it is an equity against the debtor him-
self, that the accidental resort of the paramount creditor to
the doubly-charged estate, and the consequent exhaustion of
that security, shall not enable him to get back the second es-
tate, discharged of both debts.    If, therefore, the paramount
creditor resorts to the doubly-charged estate, the *puisne* cred-
itor will be substituted to his rights, and will be satisfied out
of the other fund to the extent to which his own may be ex-
hausted.    And it seems that he may, on proposing just terms,
require the paramount creditor to proceed against the estate
on which he has himself no claim.    His right however to do
this is not an independent equity against the creditor, but a

mere incident of his equity against their common debtor."
(Adams Equity, 272.)

Now for the purposes of this case, we will suppose that the
plaintiff would have a right to maintain this action as against
all the defendants except Crockers, as the occupiers of said
homestead, and except Welch, the owner of a portion of the
land sought to be marshaled among the assets of
the estate. It would not seem that the estate,
the common debtor, would have any right to ob-
ject to such an action. Nor would it seem that LaRue, as
administrator, or the Crockers and Mary Welch, as heirs,
would have any such right; nor Gay, nor LaRue, as com-
mon creditors of the estate, for as to them all their rights
and interests could be amply protected. But as to the Crock-
ers, as occupiers of the homestead, and as to George W.
Welch, the owner of said land, the question is different. The
plaintiff's equity could not be enforced as against any of the
defendants without turning the Crockers out of house and
home, and depriving Welch of his land. Now what superior
equity has the plaintiff over the Crockers, or over Welch?
By our constitution and statutes the most sedulous care has
been manifested to secure the homestead of the debtor and to
his wife and family, as against all debts not expressly charged
upon it. As was said in the case of *Monroe v. May*, (9 Kas.
476,) "the homestead is something toward which the eye
of the creditor need never be turned. It is an element
which may never enter into his calculations in his efforts
to collect his debt. He may as well ignore that, as he does
now (except in cases of fraud) the body of the debtor." It
would certainly be against the spirit if not against the very
letter of our homestead laws to hold, that when a husband
and wife give a specific lien upon their homestead to secure
the payment of some specific debt, they thereby make such
specific lien a general security for the payment of all their
debts, present and future, so long as such specific debt re-
mains unpaid. The homestead-exemption laws provide in
effect that the homestead shall be exempt from all debts

*[margin note: Homestead exemption. Marshaling assets. Specific liens.]*

except for purchase-money, taxes, improvements, and liens given by the consent of both husband and wife. Now the plaintiff's claim does not fall within any of these exceptions. It is not for purchase-money, nor taxes, nor improvements; and the decedent and his wife never contemplated giving the plaintiff a lien on their homestead. They never supposed they were making their homestead security for the plaintiff's claim. And the plaintiff has no right, either in law or equity, to make it a security either directly or indirectly for the payment of his claim. The plaintiff does not seem to claim in this court that he can maintain this action as against Welch. He does not seem to claim that he has any equity concerning Welch's land superior to Welch's rights. And therefore he cannot expect to recover as against Welch. We think that the rights of the Crockers to their homestead, and of Welch to his land, are superior to the plaintiff's equity, and therefore that the plaintiff cannot recover in this action.

The judgment of the court below must therefore be affirmed.

BREWER, J., concurring.

HORTON, C. J., not sitting in the case.