79   357
180s 312

## Heidelbach, Friedlander & Co. and Levy, Price & Co. v. Hamilton W. Fenton et al.

1. EQUITY PRACTICE—*Where One Party Has a Lien upon Two Funds.*—Where one party has a lien or interest in two funds for a debt, and another party has a lien on or an interest in only one of the funds for another debt, the latter party has the right in equity to compel the former to resort to the other fund in the first instance for satisfaction, if that course is necessary for the satisfaction of both; but this rule will not be applied where it will operate to the prejudice of the party entitled to the double fund.

2. VARIANCE—*Judgment and Execution.*—Where a judgment is entered in vacation and the execution issued upon it refers to the judgment as having been entered in term time, such reference, when merely an error of the clerk, should be disregarded as surplusage.

3. VOLUNTARY ASSIGNMENTS—*Judgments Confessed on the Eve of—Preferences.*—Where judgments are confessed in favor of creditors on the eve of an assignment with the knowledge and procurement of such creditors, and intended as preferences, in contemplation of the assignment such judgments are void as preferences.

**Voluntary Assignment.**—Appeal from the County Court of Macon County; the Hon. WILLIAM HAMMER, Judge, presiding. Heard in this court at the May term, 1898. Affirmed. Opinion filed December 2, 1898.

MILLS BROS. and LEFORGEE & LEE, attorneys for appellants.

HUGH CREA and I. A. BUCKINGHAM, attorneys for appellees.

MR. JUSTICE WRIGHT delivered the opinion of the court.

This cause grows out of the proceedings in the matter of the assignment for the benefit of creditors of Albert F. Ross. In the month of November, 1893, Albert F. Ross, being indebted to appellee, executed to him a judgment note for such indebtedness, his wife joining therein; to secure the note a mortgage was also executed upon real estate, including homestead. On June 5, 1896, appellees caused a judgment to be confessed upon the note against Ross and wife in vacation of the Circuit Court of Moultrie

County for $6,957.95, upon which an execution issued to the sheriff of Macon county, and the same was placed in hands of the sheriff of the latter county, June 6, 1896, at 4 o'clock and twenty minutes A. M., where the execution debtors resided. The execution recited that the judgment was recovered " in the Circuit Court of the County of Moultrie, at a term thereof begun and held at Sullivan, on the 20th day of April, 1896, to wit, on the day of the date hereof, June 5, 1896, as of said term, by confession of said defendants, and which by the court was adjudged to the plaintiff for his damages herein."

On the day the execution was placed in the hands of the sheriff, payment thereof was demanded of Albert F. Ross. The following day being Sunday, Joseph A. Friedlander, representing appellants, creditors of Albert F. Ross, resid·ing at Cincinnati, Ohio, arrived at Decatur, and conferred with Ross and James W. Race. Judgment notes were executed to appellants by Ross for the amounts due to them, upon which judgments were confessed in vacation of the Circuit Court of DeWitt County, on the 8th day of June, 1896, and executions were issued and placed in the hands of the sheriff of Macon county, June 8, 1896, at 10 o'clock and seven minutes, A. M. All of the executions were on that day levied upon the stock of goods and real estate owned by Albert F. Ross. Shortly after midnight of June 8, 1896, Albert F. Ross executed and delivered to James W. Race, as assignee, an assignment of his property for the benefit of creditors, which was filed with the county clerk of Macon county on the same day at 10 o'clock and fifty-five minutes A. M. Afterward on the petition of the assignee the stock of goods levied upon by the sheriff was, by order of the County Court, surrendered to the assignee, all rights of execution creditors being saved in the order so made, and later, the assignee having converted the goods into money, amounting to $8,560.91, a controversy arose among the execution creditors concerning the priorities to be allowed to them in the distribution of the fund, whereupon the assignee applied to the County Court for an order

directing him as to the manner of such distribution.   Upon the hearing the County Court ordered that appellee be first paid, that the executions of appellants were void on the ground that the notes and warrants of attorney upon which the judgments were confessed should be taken and held as part of the assignment, and that appellants should be treated as unsecured creditors and paid *pro rata* with general creditors, from which order appellants prosecute this appeal.

Appellants urge, in support of their assignment of errors, that the order of the County Court should be reversed because, (1) appellee having the right to resort to two funds—his mortgage security, as well as the fund in the hands of the assignee—he must first resort to the one wherein his right is exclusive, before resorting to another where it trenches upon the rights or operates to the prejudice of others; (2) a variance between the execution and the judgment upon which it is based renders the execution void, and (3) the judgment notes given appellants were not intended as preferences in contemplation of the assignment, and were not void for such reason, as held by the County Court.

While the general rule may be conceded that where one party has a lien or interest in two funds for a debt and another party has a lien on or an interest in only one of the funds for another debt the latter party has the right in equity to compel the former to resort to the other fund in the first instance for satisfaction if that course is necessary for the satisfaction of both, yet this rule will not be applied where it will operate to the prejudice of the party entitled to the double fund.   Brown v. Cozard, 68 Ill. 178; Story's Eq. Jur., Vol. 1, Sec. 633.   In the case presented, if appellee has a lien upon the fund in the hands of the assignee, and for the purpose of this point it must be conceded that he has, it is apparent the money is ample and sufficient to satisfy his claim.   No evidence is discoverable in the record of the value of the mortgaged premises, nor as to its sufficiency as a security for the debt.   It can not be presumed

that a foreclosure sale would produce a sum sufficient to pay the debt, or any particular amount, or any considerable part thereof. Who can determine, or in what manner, that the mortgaged premises are, or will be, sufficient to pay the debt? And if not, how much of the other fund shall be reserved for that purpose? It seems to us the difficulty in determining such questions of itself would prejudice appellee. In the hands of the assignee there is a fund, upon which appellee confessedly has a lien, sufficient to pay the debt, and which may be paid without further litigation. But to make the mortgage availing, another suit must be instituted and prosecuted to a final decree and sale. According to the usual practice, appellee, to realize anything at such sale, would be required to become the bidder, advance the costs of the court, the expenses of the sale, and then await the statutory period of redemption; and in the meantime, to protect his security, very likely be required to pay the taxes, and this, too, while his debtor was in the enjoyment of the rents and profits. We do not believe the rules of equity require the diligent creditor to assume all such delays, vexations and burdens, that surely would operate to his prejudice, and to the profit of a less vigilant creditor. A mortgage under such circumstances would be a clog to him who might receive it, and no reward for his diligence.

When rightly examined there is no substantial variance between the execution and the judgment of appellants, under which it was issued. It is not denied the judgment was in fact entered in vacation. It was so entered, and it is therefore clear to us the recitals of the execution in respect to the judgment having been rendered in term time is a mistake, a mere error of the clerk in issuing it, and should, therefore, be disregarded as surplusage, and so disregarding it the execution is left as correctly describing the judgment as of the date of June 5, 1896, and in vacation.

Upon an examination of the evidence in the record, we are satisfied with the finding of the trial court, that the judgment notes, and the judgments entered thereon, and the executions issued upon such judgments in favor of appel-

lants, were with their knowledge and procurement, intended as preferences, in contemplation of the assignment. They were, therefore, under the statute and decisions, void as preferences to appellants.

Finding no error in the record and proceedings of the County Court, its order will be affirmed.